**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CAROLYN V. WILLIAMS,                    Case No. 1:16-cv-347
      Plaintiff,                                Dlott, J.
                                                     Litkovitz, M.J.

    vs.

COMMISSIONER OF                          **REPORT AND**
SOCIAL SECURITY,                         **RECOMMENDATION**
      Defendant.

      Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 16),

and plaintiff's reply memorandum (Doc. 17).

**I. Procedural Background**

      Plaintiff protectively filed her application for SSI in September 2012, alleging disability

since July 1, 2008, due to bipolar disorder, depression and mania. (Tr. 177). Plaintiff's

application was denied initially and upon reconsideration. Plaintiff requested and was granted a

*de novo* hearing before administrative law judge (ALJ) Kevin J. Detherage. Plaintiff was

represented at the hearing by a non-attorney representative. Plaintiff and a vocational expert

(VE) appeared and testified at the ALJ hearing. On September 4, 2014, the ALJ issued a

decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

2

the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in

the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since September
> 10, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: status post right rotator
> cuff tear and decompression surgery, status post mid humeral shaft fracture, status
> post right fifth metacarpal fracture, depression, affective disorder, anxiety, and
> substance use disorder (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the
> [plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 416.967(b) except: The [plaintiff] is limited to simple and routine tasks in
> a work environment free of fast paced production requirements involving only
> simple work related decisions and routine work place changes. She should avoid
> exposure to hazards such as heights or machinery with moving parts. She can
> frequently reach, including overhead reaching, with the right upper extremity.
> The [plaintiff] can frequently handle and finger with the upper extremity. She can
> have occasional contact with co-workers, supervisors, and the general public. The
> [plaintiff] is likely to be off task 8% of the work period.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).
>
> 6. The [plaintiff] was born [in] . . . 1971 and was 41 years old, which is defined as
> a younger individual age 18-49, on the date the application was filed (20 CFR
> 416.963).

7. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[1]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since September 10, 2012, the date the application was filed (20 CFR 416.920(g)).

(Tr. 22-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as marker (3,907 jobs locally and 476,539 jobs nationally), cleaner (1,224 jobs locally and 894,920 jobs nationally), and folder (3,700 jobs locally and 419,000 jobs nationally). (Tr. 29).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination. Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff alleges as her sole assignment of error that the RFC finding is not supported by

the record. (Doc. 8 at 9-11).

### A. Physical impairments

Plaintiff argues that the ALJ failed to account for functional limitations imposed by her

right upper extremity impairments, which she implies are work-preclusive. Plaintiff alleges that

those limitations would restrict her to performing "at least" sedentary work. (*Id*. at 9). Plaintiff

notes that the only sedentary job identified by the VE that she could perform was security

systems monitor, which the VE testified plaintiff could perform if limited to occasional use of

the right upper extremity. (*Id*.). Plaintiff does not deny she could perform that position, but she

contends there are "very few" such jobs in "both the national and regional economies." (*Id*.).

Plaintiff argues that in finding she could instead perform a significant number of jobs at the light

5

exertional level, the ALJ ignored the objective findings of plaintiff's shoulder surgeon, Dr.

Barton Branam, M.D., and plaintiff's "longitudinal treatment history resulting in several

surgeries"; failed to give controlling weight to "any of the medical opinions of record"; and

"relied upon his own interpretation of the evidence" and "essentially acted as his own medical

expert," which plaintiff alleges is "well-known" to be "impermissible by law." (*Id*. at 10).

Plaintiff's argument that the ALJ erred by failing to account for the physical limitations

imposed by her right upper extremity impairments is factually and legally flawed. Plaintiff has

not cited any legal authority to support her argument that the ALJ erroneously relied on his own

unsupported interpretation of the physical evidence in fashioning the RFC. Nor does the

applicable law support plaintiff's argument that the ALJ erred in this regard. The Social Security

regulations vest the ALJ with responsibility "for reviewing the evidence and making findings of

fact and conclusions of law." 20 C.F.R. § 416.927(e)(2). "Physicians render opinions on a

claimant's RFC, but the ultimate responsibility for determining a claimant's capacity to work lies

with the Commissioner." *Profitt v. Comm'r. of Soc. Sec.*, No. 1:13-cv-679, 2014 WL 7660138,

at *6 (S.D. Ohio Dec. 12, 2014) (Report and Recommendation), *adopted,* No. 1:13-cv-679, 2015

WL 248052 (S.D. Ohio Jan. 20, 2015) (quoting *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x

435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F.

App'x 574, 578 (6th Cir. 2009)). *See also* 20 C.F.R. § 416.946(c) (the responsibility for

assessing a claimant's RFC lies with the ALJ). The ALJ is responsible for assessing a claimant's

RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). *See*

*also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008)

(the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the

6

record) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); *Bingaman v. Comm'r of Soc. Sec.,* 186

F. App'x 642, 647 (6th Cir. 2006)). *See also Ford v. Comm'r of Soc. Sec*., 114 F. App'x 194,

198 (6th Cir. 2004) (Court of Appeals stated that the RFC determination, which is part of the

disability evaluation, is expressly reserved for the Commissioner). An ALJ is not required to

adopt precise limitations offered by a single medical source in assessing a claimant's RFC.

*Ford*, 114 F. App'x at 198 (affirming district court decision that upheld an ALJ finding of RFC

for light work with restrictions, despite absence of a medical source opinion assessing plaintiff as

capable of light work). However, the "ALJ must not substitute his own judgment for a doctor's

conclusion without relying on other medical evidence or authority in the record." *Mason v.*

*Comm'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008)

(citations omitted); *Hammock v. Comm'r of Soc. Sec.*, No. 1:12-cv-250, 2013 WL 1721943, at *8

(S.D. Ohio Apr. 22, 2013) (Report and Recommendation), *adopted,* 2013 WL 4080714 (S.D.

Ohio Aug. 13, 2013).

It is error for the ALJ to omit restrictions from the RFC finding where the medical

opinion evidence establishes the claimant has specific mental or physical limitations. *See Byrne*

*v. Comm'r. of Soc. Sec.,* 3:14-cv-1633, 2015 WL 1757935, at *2 (N.D. Ohio Apr. 17, 2015) ("An

RFC must include limitations on a claimant's ability to work [and] a claimant's physical or

mental diagnoses [] to the extent those diagnoses manifest themselves in work-related

limitations.") (citing *Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 632 (6th Cir. 2004)).

Here, the ALJ's assessment finding plaintiff capable of a restricted range of light work is

supported by substantial evidence, including the medical opinion evidence. The ALJ relied in

part on the findings from a March 2013 report prepared by consultative examining physician Dr.

Martin Fritzhand, M.D.  (Tr. 26, citing 683-89).  Dr. Fritzhand noted that plaintiff reported
intermittent sharp pain in her right shoulder.  (Tr. 683).  However, he also reported that plaintiff
was not seeing a physician at the time of his examination and she was taking only over- the-
counter medication (Aleve) and using a heating pad for her pain.  (*Id*.).  Further, Dr. Fritzhand
reported largely normal findings.  Range of motion, grip strength, grasp, reach and manipulative
ability were all within normal range.  (Tr. 683-89).  Dr. Fritzhand opined that plaintiff was
capable of performing a moderate amount of sitting, standing, ambulating, bending, pushing,
pulling, lifting, and carrying heavy objects.  (Tr. 685).  Dr. Fritzhand's opinion, which the ALJ
gave "some weight" (Tr. 28), is consistent with and supports the ALJ's finding that plaintiff was
capable of performing a range of light work.

The ALJ's RFC finding for a limited range of light work is also supported by the
objective findings and longitudinal evidence related to plaintiff's shoulder and arm impairments.
(Tr. 26-27).  The ALJ noted that plaintiff developed pain in her right shoulder in 2011 after a car
door slammed into it.  (Tr. 26, citing Tr. 426).  An October 2013 MRI confirmed a rotator cuff
tear in the right shoulder, and plaintiff underwent surgery in December 2013 to repair what was
disclosed to be a "massive rotator cuff tear," right shoulder impingement syndrome, and
synovitis.  (*Id*., citing Tr. 779-786, 803).  At her follow-up with the orthopedist's office in May
2014, plaintiff had full range of motion of the right shoulder, she had no pain, and the orthopedist
did not impose any restrictions in connection with her shoulder impairment.  (*Id*., citing Tr. 966;
Tr. 27).  This evidence demonstrating that plaintiff's shoulder surgery was successful supports
the ALJ's conclusion that plaintiff's rotator cuff tear did not impose greater functional
limitations than those assessed in the RFC finding.

Finally, the ALJ reasonably found there was no evidence that plaintiff's humeral fracture imposed any significant limitations.  (Tr. 26, 27).  Plaintiff did not attend physical therapy to rehabilitate her arm as she had been encouraged to do, and she required an open reduction and internal fixation of the humeral fracture in March 2014 due to disuse osteopenia.[2]  (*Id.*, citing Tr. 936, 947).  However, by her May 2014 check-up plaintiff was doing well and complaining only of some pain along the distal aspect of the incision site, for which she requested but was refused narcotic pain medication.  (*Id.*, citing Tr. 966; Tr. 27).

The ALJ reasonably determined based on this evidence of record that plaintiff's right upper extremity impairments limited her to a range of light work.  Plaintiff has not pointed to any opinion evidence or objective findings which the ALJ failed to consider that show his decision is not substantially supported by the evidence.  Plaintiff acknowledges that Dr. Fritzhand's March 2013 examination results were "essentially normal."  (Doc. 8 at 9).  Although subsequent imaging results disclosed a rotator cuff tear, the evidence shows that surgery to repair the tear was successful.  Plaintiff notes that as of April 10, 2014, she was restricted to lifting no more than five pounds.[3]  (Doc. 8 at 9, citing Tr. 967; *see also* Tr. 968).  However, there is no indication that this restriction, which treating surgeon Dr. Branam assessed approximately one month after plaintiff's humeral procedure, was intended to be long-term or that it was continued at plaintiff's May 15, 2014 follow-up appointment.  (Tr. 965-66).  Plaintiff has not pointed to any

---

[2] Osteopenia is "reduced bone mass due to a decrease in the rate of osteoid synthesis to a level insufficient to compensate normal bone lysis. The term is also used to refer to any decrease in bone mass below the normal." http://www.medicinenet.com/osteopenia/article.htm.

[3] Plaintiff alleges that she was ordered to lift no more than five pounds as of May 15, 2014, but the record she cites for this proposition is dated April 10, 2014.  (Doc. 8 at 9, citing Tr. 967).

other evidence to show that her shoulder/arm impairments imposed functional limitations that continued past the post-operative recovery period. Thus, the ALJ's decision finding plaintiff could perform a range of light work with frequent[4] reaching is supported by substantial evidence.

Assuming, *arguendo*, that plaintiff's right upper extremity impairments restricted her to sedentary work, any error the ALJ committed by not limiting plaintiff to sedentary work was harmless. The VE testified that if plaintiff were limited to occasional[5] overhead reaching, handling and fingering on the right in addition to the other restrictions in the RFC finding, she could perform the sedentary job of "system surveillance monitor." (Tr. 85). Plaintiff apparently concedes that she could perform the sedentary job of security systems monitor despite her right upper extremity impairments.[6] (Doc. 8 at 9). Plaintiff implies, however, that the VE did not identify a significant number of these jobs by arguing that "very few" such jobs are available in the regional and national economies. (*Id*. at 9-10). Plaintiff's characterization of the number of jobs the VE identified is not accurate. Under the Social Security regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). The VE testified that there were 360 and 81,000 security systems monitor jobs in the regional and national economies, respectively. (Tr. 85). Sixth Circuit case law establishes that this is a "significant number." *See*

---

[4] The Social Security Regulations define "frequent" as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6 (1983).

[5] Under the regulations, "occasional" means "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (1983).

[6] Plaintiff alleges: "Based on Plaintiff's limits with her right upper extremity alone, she would be reduced to at least sedentary, and the only sedentary job the VE could identify was system surveillance monitor, of which there are very few jobs in the [sic] both the national and regional economies." (Doc. 8 at 9).

10

*Taskila v. Comm'r. of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (200 jobs in the region and 6,000 jobs nationwide amounted to "significant numbers" of available jobs) (citing *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 579 (6th Cir. 2009) (2,000 jobs in the national economy constituted a significant number)). *See also Nash v. Sec'y of H.H.S.,* 59 F.3d 171 (Table), 1995 WL 363381, at *3 (6th Cir. June 15, 1995) (70,000 jobs in the national economy was a significant number); *Putman v. Astrue,* No. 4:07-cv-63, 2009 WL 838155, at *2-3 (E.D. Tenn. Mar. 30, 2009) (200-250 regional jobs and 75,000 national jobs constituted significant numbers) (citing cases). Thus, because the evidence establishes that plaintiff could perform a significant number of jobs if restricted to the sedentary job of security systems monitor, any error the ALJ committed by formulating an RFC for a range of light work was harmless.

### B. Mental impairments

Plaintiff alleges that her mental impairments "further erode her ability to perform any type of remunerative employment." (Doc. 8 at 10). She argues that the ALJ erred by finding that her mental health symptoms "significantly" improved with treatment. (*Id.*, citing Tr. 27). Plaintiff has not cited any legal authority to support her argument that the ALJ erred in assessing her mental RFC. As best the Court is able to discern, the basis of her argument is that the ALJ erred by failing to include additional restrictions in the RFC finding to account for her limitations on concentration and social interaction. (*Id.* at 10). It is error for the ALJ to omit restrictions from the RFC finding where the medical opinion evidence establishes the claimant has specific mental limitations. *See Byrne,* 2015 WL 1757935, at *2 (the RFC must include limitations on the claimant's ability to work and mental diagnoses to the extent they are manifested in work-related limitations); *Ealy v. Comm'r. of Soc. Sec.*, 594 F.3d 504, 517 (6th Cir. 2010) (ALJ

11

erroneously omitted specific speed- and pace-based restrictions the claimant was found to have from hypothetical to the VE). Here, however, plaintiff has not shown that the ALJ erred by failing to account for her mental limitations in the RFC finding.

The ALJ took plaintiff's mental limitations into account in the RFC finding by limiting plaintiff to "simple and routine tasks in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes"; "occasional contact with co-workers, supervisors, and the general public"; and jobs where she could be "off task 8% of the work period." (Tr. 24). In rendering the mental RFC finding, the ALJ relied on the February 25, 2013 mental RFC assessment of the state agency reviewing psychiatrist on reconsideration, Dr. David Demuth, M.D., whose opinion the ALJ gave "some weight." (Tr. 27, citing Tr. 100-114). The ALJ was permitted to rely on the state agency psychiatrist's opinions to support his findings. *See* 20 C.F.R. § 416.927(e); *Wisecup v. Astrue*, No. 3:10-cv-325, 2011 WL 3353870, at *7 (S.D. Ohio July 15, 2011) (Ovington, M.J.) (Report and Recommendation), *adopted*, 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011) ("opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight"). Dr. Demuth opined that plaintiff could function in settings involving only occasional and superficial interactions with others and that she retained the ability to complete one to four-step tasks. (Tr. 111). The ALJ adopted the limitations in social functioning assessed by Dr. Demuth by limiting plaintiff to occasional contact with co-workers, supervisors and the general public. (Tr. 24; Tr. 111). The ALJ found these limitations were supported by the evidence of record and plaintiff's "reports concerning her tendency to isolate herself." (Tr. 27). To account for plaintiff's moderate difficulties with respect to

12

maintaining attention and concentration, the ALJ further restricted plaintiff to jobs involving "simple and routine tasks in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes" where she could be "off task 8% of the work period." (Tr. 24, 27). Plaintiff has not shown that she suffers from additional mental restrictions that are supported by the evidence of record which the ALJ credited but erroneously omitted from the RFC. No treating or examining mental health provider of record issued an assessment of plaintiff's mental functional capacity. Nor has plaintiff pointed to other evidence in the record that shows her mental impairments impose greater limitations in any area of functioning than those assessed by the ALJ. Thus, the ALJ's assessment of plaintiff's mental limitations is substantially supported by the evidence and must stand. *See Ealy*, 594 F.3d at 512 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009)).

Plaintiff makes additional arguments in connection with the ALJ's assessment of her mental RFC that actually relate to the ALJ's credibility finding. Plaintiff suggests that the ALJ erred by discounting her credibility based on her failure to show for medical appointments and attend physical therapy following her surgeries. (Doc. 8 at 11, citing Tr. 812, 946-58). Defendant argues that plaintiff has waived her credibility argument by mentioning it in only a perfunctory manner. (Doc. 16 at 7, n.2, citing *Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013)).

The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn,* 709 F.3d at 624 (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005)). "It is not

13

sufficient for a party to mention a possible argument in the most skeletal way, leaving the court

to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See*

*also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to

develop an argument challenging an ALJ's non-disability determination amounts to a waiver of

that argument). Plaintiff has neither legally nor factually developed her argument challenging

the ALJ's credibility finding in the Statement of Errors. Plaintiff's counsel cites few records and

no legal authority in the Statement of Errors to support this allegation of error, and the reply brief

makes no mention of the alleged error. Plaintiff's argument in the Statement of Errors reads in

its entirety as follows:

> The ALJ also discredits Plaintiff for missing a lot of appointments and failing to
> attend physical therapy following her surgeries. Here, the ALJ has misplaced
> Plaintiff's experience of mental health symptoms as non-compliance and has
> overlooked the evidence of record. This isolative behavior certainly worsened
> after Plaintiff was attacked outside of her home in January of 2014, and Dr.
> Branam's notes further indicate that her assault also played a role in her inability
> to attend physical therapy appointments (Tr. 812). Furthermore, while the ALJ
> notes that Plaintiff never attended physical therapy, physical therapy notes from
> Drake Rehab evidence the contrary (Tr. 946-958).

(Doc. 8 at 11).

Plaintiff does not cite to any portion of the record to support her barebones allegations

that the ALJ discredited her for missing appointments and failing to attend physical therapy.

Contrary to plaintiff's argument, the ALJ did not indicate in his written decision that he

discounted plaintiff's credibility based on her spotty history of keeping appointments. Further,

the ALJ did not state or suggest in his written decision that plaintiff "never attended physical

therapy" as plaintiff alleges. (*Id.*). Rather, the ALJ accurately represented the record by noting

that plaintiff "was supposed to go to physical therapy to treat her right arm [after her fractured

14

humerus], but she never returned for follow-up evaluation and she missed two scheduled therapy sessions," which led to her discharge from physical therapy "due to failure to follow-up or attend therapy sessions." (Tr. 26, citing Tr. 947- "[Plaintiff] attended only 2 sessions of PT for (R) shoulder pain and disability. She was contacted by phone and . . . encouraged to attend PT or see MD for reassessment. She did not return to our office. She then no showed 2 additional sessions. We have no follow up scheduled and she has not contacted our office. We will discharge her at this time. (Last seen 3/31/14)"). Plaintiff accurately notes that she was unable to attend physical therapy for a period of time after she fractured her humerus (Tr. 812) and that she subsequently attended physical therapy for two sessions before being discharged for no shows (Tr. 946-58), but she has not presented a cogent argument to show how these facts undermine the ALJ's credibility finding. Because plaintiff has neither legally nor factually developed her argument challenging the ALJ's credibility finding, she has waived the argument.

**C. Conclusion**

The ALJ did not err in rendering the RFC finding, and the finding is substantially supported by the evidence of record. Even assuming the ALJ erred by failing to restrict plaintiff to sedentary work, the ALJ's error was harmless in light of the VE's testimony showing that plaintiff could perform a significant number of sedentary jobs. Plaintiff's sole assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED.**

Date : 1/6/2017

Karen L. Litkovitz
United States Magistrate Judge

15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CAROLYN V. WILLIAMS,  
    Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
    Defendant.

Case No. 1:16-cv-347  
Dlott, J.  
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).